### HOUGHTON & ROBINSON v. J. C. ROGAN.

Decided November 24, 1897.

**1. Vendor's Lien Note—Innocent Purchaser.**

Though a note is not in fact given for the purchase money of land conveyed by the payee to the maker, yet if the note and conveyance recite that it was so given and secured by vendor's lien, and it is bought by an innocent purchaser, before maturity, for a valuable consideration, such purchaser is entitled to enforce the lien against the purchaser of the property with constructive notice.

**2. Foreclosure—Pleading.**

When, in answer to a suit for foreclosure of a vendor's lien, facts were alleged to disprove the assertion that the claim was for purchase money, and in a supplemental petition plaintiff pleaded facts showing an express contract lien, with prayer for general relief, he was entitled to a foreclosure of the contract lien, though not shown to be for purchase money.

APPEAL from San Saba. Tried below before Hon. W. M. ALLISON.

*Burleson & Meek*, for appellants.—1. House owned property valued at $2250, and Clark owned property valued at $1500. House conveyed to Clark and Clark to House on the same day, Clark paying to House $750, the difference in value. Now, the proposition of House to Clark to execute a vendor's lien note for $450 could not have the effect to change the nature of the contract from one of exchange to that of sale; and if so, it would be immaterial, inasmuch as the entire purchase price of Clark's property was first paid by House's conveyance of property to Clark worth $2250.

2. The vendor's lien is created by law, and not by agreement, and it

can not be established by proof that the parties agreed that one of them should have a vendor's lien upon certain lands, nor can it be created by recital in a note, it not appearing that it was in fact made for purchase money, so as to take priority of an express lien upon the property. The vendor's lien only secures the unpaid purchase money. Howard v. Davis, 6 Texas, 182; Wynn v. Flannegan, 25 Texas, 781; Malone v. Kaufman, 38 Texas, 456; Flanagan v. Cushman, 48 Texas, 241; Swain v. Cato, 34 Texas, 397: Wasson v. Davis, 34 Texas, 166; Claes v. Loan Assn., 83 Texas, 53; Bergman v. Blackwell, 23 S. W. Rep., 243.

3. A recital in a note and deed that the note was given for purchase money of land can be explained and contradicted by parol testimony; and a remote purchaser in possession of lands against which it is sought to enforce the vendor's lien can defend by showing that he is a purchaser without notice of the lien, and by urging whatever defense of law or fact the maker of the note could. Hicks v. Morris, 57 Texas, 658; Burks v. Watson, 48 Texas, 107; Arledge v. Hall, 54 Texas, 402.

4. Plaintiff having brought suit upon the $450 note executed by House to Clark, and alleged that it was for part of the purchase money for the property described in his petition to secure which an express vendor's lien was retained in deed and note, and having prayed for the foreclosure of his said vendor's lien, would not be entitled to foreclose a contract lien, as has been done in this case. And especially would he not have a right to foreclose a vendor's lien against the defendant, Ed House, and a contract lien against appellants. Rev. Stats., art. 1191; Rules 4 and 5 for District Court.

*Walters Brothers*, for appellee.—1. A transaction by which certain pieces of property are given for others, a definite price being put on each, and the difference being paid in cash or by note, is a sale and not an exchange. Thornton v. Moody, 24 S. W. Rep., 331.

2. Where the title to the property was in Clark, and by a mutual contract he deeded it to House, with the express understanding that House should execute his note to him for $450 as part of the purchase money, and that Clark should retain and express in his deed a lien to secure the payment of said note, and said lien is also acknowledged in the note, then the superior title would remain in Clark until said note was paid, and whether the Court regards the lien as technically a vendor's lien, or simply a contract lien in writing, executed by defendant House and created on the land, there are no valid reasons why the note and the lien can not be enforced, according to the contract between the parties, and which was made by the defendant House in writing. Wright v. Campbell, 18 S. W. Rep., 706; Bushy v. Bush, 79 Texas, 658; Berry v. Boggess, 62 Texas, 239; Safe Deposit Co. v. Harrell, 39 S. W. Rep., 142.

3. Though the vendor's lien is one which equity embraces, and is not, strictly speaking, created by contract, yet our decisions recognize the right of parties to create by contract on the sale of land a lien which will bind the land for unpaid purchase money. Such a lien will be en-

forced when made by the parties, and its technical misdescription in a note intended to secure it will not affect it. Helm v. Weaver, 69 Texas, 143; Schwarz v. Bank, 67 Texas, 219.

4. A vendor's lien may be so arranged as to secure other money besides the purchase money. Bumpass v. Morrison, 70 Texas, 756; Edwards v. Brown, 68 Texas, 337.

5. A blank indorsement of a vendor's lien note, or its transfer by delivery when payable to bearer, carries the lien with it. DeBruhl v. Maas, 54 Texas, 464; Russell v. Kirkbride, 62 Texas, 455.

6. The petition consists of an original petition and such supplemental petitions as may be necessary in the course of pleading by the parties to the suit to enable the plaintiff to state all the facts presenting his cause of action, and such other facts as may be required to rebut the facts that may be set up in the original and supplemental answer as pleaded by the defendant. Rule 3, 47 Texas, 616.

In plaintiff's second supplemental petition he makes replication to the different allegations in defendant's amended answer, and sets up specifically all the terms of the transaction upon which the note and lien sued upon herein were based. And besides a prayer in his amended original petition and second supplemental petition for judgment on the note for principal, interest, and attorneys' fees, and a foreclosure of his vendor's lien on said property, he also prays for general relief.

KEY, ASSOCIATE JUSTICE.—Appellee sued Ed House on a promissory note and to foreclose a vendor's lien on the east half of block 12 in the Harwood & Ventress addition to the town of San Saba. He also made Houghton & Robinson parties defendant upon the ground that they were asserting title to the said half block of land. The note was made payable to J. S. Clark or bearer and was by Clark indorsed to appellee.

Houghton & Robinson claimed to have purchased the land from Clark, and alleged that the note sued on was not given for any part of the purchase money of the land, and therefore no vendor's lien could exist to secure its payment.

Appellee in a supplemental petition pleaded, among other things, that he acquired the note for a valuable consideration, without any notice that it was not, as recited on its face, given for part of the purchase money of the land.

There was a nonjury trial and judgment rendered for the plaintiff. Houghton & Robinson have appealed. The judge filed the following findings of fact:

"1. That on the 25th day of May, 1894, Joe S. Clark owned the east half of block No. 12 in the Harwood and Fentress addition to the town of San Saba, on which was a dwelling house and other improvements, which he valued at $1500; that there was no incumbrance on it.

"2. That Ed House, on said date, owned block No. 4 in the town of San Saba, on which was also situated a dwelling house and other improvements valued at $2250, and that there was then an incumbrance thereon,

then estimated by House at $450, held by Ward, Murray & Co. for L. & H. Blum.

"3. That Ed House proposed to Joe S. Clark on said date, to sell or exchange his said property for Clark's said property, but demanded as much as $750 in cash (in order that he might invest it in another homestead) as the difference in value in said two pieces of property.

"That to have made such a trade would have left the $450 incumbrance upon the House property in the hands of said Clark, which proposition said Clark refused to accept.

"4. That said House then proposed to said Clark to sell and trade him his said property for $2250, to be paid substantially as follows, to wit: $750 in cash, $1050 to be represented by that much valuation in J. S. Clark's said property in exchange therefor, and the assumption by said Clark of said incumbrance of $450 held by Ward, Murray & Co., and that he, the said House, would then give to J. S. Clark $1050 represented by that much value in his said block No. 4, and his promissory note in writing for $450, due twelve months after the date thereof, bearing 10 per cent interest per annum from and after the date of said note, and providing for 10 per cent as attorney fees, if collected by an attorney, as the balance due to said Clark for his said property and for assuming and paying this debt held thereon by Ward, Murray & Co. for Blum; and that said note from House to Clark should be secured by a vendor's lien on said east one-half of block 12, to be conveyed by Clark to House.

"5. That said Clark accepted said proposition, upon condition that he or said House for him could find some one who would buy said vendor's lien note from him and carry the same until maturity thereof, explaining at the time that he didn't have the money on hand to spare to enable him to pay to said House the $750 in cash and the $450 to Ward, Murray & Co., and retain said note himself.

"6. That in pursuance of an agreement between House and Clark, said House then went to John T. Walters, an attorney at San Saba, and secured his services, whereby said Walters was to find a purchaser for said note who would carry the same until maturity thereof, provided said House would keep said property insured against fire for enough to cover said indebtedness until the same was paid, which said House then and there agreed to do.

"7. That said Walters then went to plaintiff and inquired of him to know if he would purchase a good vendor's lien note given by Ed House to J. S. Clark for part of the purchase money due upon the house and lot where J. S. Clark was then residing and which he was selling to House, stating that said property was to be kept fully insured against fire for enough to cover the amount due on said note, and that it would also be secured by a vendor's lien, retained and expressed in said deed from Clark to House.

"8. That plaintiff thereupon agreed to purchase said note under said conditions, at a reasonable discount, and defendant House and J. S. Clark were so notified by Walters.

"9. That therefore said trade was made between House and Clark and all the papers pertaining thereto, including the note sued on herein, were duly executed and delivered by and to the proper parties; that afterwards and on the same day said Walters brought said note (being the same one sued upon herein) to plaintiff, properly indorsed by Joe S. Clark, and proposed to sell the same to plaintiff for the sum of $432 in cash, which plaintiff then and there paid to said Walters for Joe S. Clark as a consideration for said note, without recourse, and said note reciting that an express lien was retained on said property to secure its payment.

"10. That J. S. Clark instructed said Walters to pay the money received for said note over to Ed House, which he did, and said House then and there accepted the same in satisfaction of $450 of the $750 in cash that he was to receive from said Clark.

"11. That J. S. Clark also paid to said House the sum of $312 in cash, and assumed and paid said incumbrance to Ward, Murray & Co., amounting to $438.

"12. That John T. Walters was not acting as the agent of plaintiff in the premises.

"13. That plaintiff had nothing to do with shaping or making the trade between said House and Clark, and knew nothing of the terms or conditions of said trade, other than what was told him by said Walters, as above found.

"14. That there was no fraud intended to be perpetrated upon defendants Houghton & Robinson in said trade between House and Clark.

"15. That there was no usurious interest added into or charged upon the note in controversy.

"16. That by the terms of said deed from said J. S. Clark and wife to Ed House, a vendor's lien was expressly retained therein on the property thereby conveyed, to secure the payment of the note sued on herein, and that said deed was duly filed and recorded in the deed record of San Saba County, Texas, on the 25th day of May, 1894, and that said note also recited such lien.

"17. That defendants Houghton & Robinson's deed of trust on the said east half of block No. 12 was by them taken subsequent to and with constructive notice of plaintiff's said incumbrance.

"18. That the two notes claimed by defendants Houghton & Robinson as assignees of T. H. Murray and John McKenna, respectively, together with the deed of trust taken on said east half of block 12, to secure the same, were all made subsequent and said deed of trust taken subject to plaintiff's said incumbrance.

"19. The plaintiff is now the owner of said note, and entitled to collect the same.

"20. That after the maturity of said note plaintiff placed it in the hands of an attorney for collection, and brought this suit on the same to enforce collection.

"21. That it was specially agreed to by and between defendant Ed

House and Joe S. Clark, in their said trade, that the note sued on herein should be and was by said House executed and delivered to said Clark as part of the purchase price to be paid by House to said Clark for said east half of block 12, and that said Clark and wife should retain and express a vendor's lien in their said deed on said property, to secure the payment of the same.

"22. That under the contract in writing, made between said House and said Clark on May 25, 1894, evidenced by the note sued upon and by the deed executed on said day by Clark to House, it was agreed by said House that the said payment of said note sued upon in this case should be secured by an express lien on the east one-half of said block 12, and that said note does constitute an express lien on said property."

*Opinion.*—Appellants ask a reversal of the judgment upon three assignments of error. The first two assail the findings that there was a sale of the property and that the note sued on was given in part payment therefor, and the third asserts that there are no pleadings that authorized the trial court's second conclusion of law, to the effect that the note was secured by an express lien on the land.

While we are not prepared to say that the findings of fact complained of are not sustained by evidence, still, if it be conceded that as between Clark and House there was no vendor's lien on the land, such conclusion, in view of other findings that are not complained of, would not preclude the plaintiff's right to recover. The note recited upon its face that it was given for part of the purchase money of the land, and that it was secured by a vendor's lien; and it appearing that appellee bought it before maturity for a valuable consideration, believing that it was for part of the purchase money of the land, and without notice to the contrary, he was an innocent holder thereof, and entitled to have it enforced, according to its terms.

Furthermore, considering the plaintiff's first amended original and supplemental petition, including his prayer for general relief, we think the issue of an express or contract lien was presented, and the court having found that such lien existed, and the finding not being challenged as unsupported by testimony, appellee was entitled to recover.

No reversible error has been pointed out, and the judgment will be affirmed.

*Affirmed.*